LUIGI BOCCELLA *vs.* HOLT-FAIRCHILD COMPANY.

Suffolk.    November 17, 1913. — February 28, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Negligence,* Employer's liability.

In an action against a building contractor under the employers' liability act for injuries sustained by the plaintiff from the block of a set of falls falling on him after it had been tied to the falls negligently by the defendant's superintendent, where the plaintiff, whose knowledge of the English language is limited, has testified that he did not hear a warning from a fellow workman and further has testified that the superintendent said "He go to the office that way — he go when he get the rope ready. . . . He said go away," it is for the jury to say whether the plaintiff understood the superintendent to tell him to "go away" from beneath the block or whether he understood him merely to say that he himself was going away, and, on this and other evidence showing the plaintiff to have been at work in the ordinary way under the direction of the defendant's superintendent, the question whether he was in the exercise of due care at the time of his injury properly may be submitted to the jury.

If a superintendent, in charge of workmen engaged in the construction of a building, says to one of the workmen who is having some difficulty in fastening a block by a rope to a set of falls, "Why don't you tie it this way?" and proceeds to tie it himself, and then gives an order to a workman above to hoist, whereupon the knot parts or unties, although subjected to no undue strain, and the block falls on the first named workman and injures him, these facts are evidence that the injury was caused by the negligence of a person entrusted with and exercising superintendence.

TORT under St. 1909, c. 514, § 127, by a laborer employed by a construction company engaged in building the Young Men's Christian Association building in Chelsea, for personal injuries sustained on July 22, 1910, in the employ of the defendant and alleged to have been caused by the negligence of a person in the service of the defendant entrusted with and exercising superintendence. Writ dated October 18, 1910.

In the Superior Court the case was tried before *Sanderson, J.,* who at the close of the plaintiff's evidence, the material part of which is described in the opinion, ordered a verdict for the defendant. The defendant alleged exceptions, subject to a stipulation of the parties, that, if the case should have been submitted to the jury, judgment should be entered for the plaintiff in the sum of $225, and that otherwise judgment should be entered for the defendant.

*L. S. Thierry,* for the plaintiff.

*C. S. Knowles,* for the defendant.

BRALEY, J.   The defendant admits that due notice of the time, place and cause of the accident was given, and that one Annis had been entrusted with superintendence of the work of construction within the meaning of St. 1909, c. 514, § 127, cl. 2.   It appears that, while engaged about the building, the plaintiff, having been directed by the superintendent to get a set of falls and send them up to fellow workmen standing on a staging at the third story, complied with the order.   A workman above let down a rope to the block of the falls, but, the plaintiff having some difficulty in tying the rope to the falls, the superintendent tied it himself, saying to the plaintiff, "Why don't you tie it this way?"   After the knot had been made the superintendent gave an order to the workman above to "hoist it up."   The falls consisted of a number of feet of rope "badly kinked," and as the rope ascended it was unsnarled or uncoiled by the plaintiff.   But after ascending some twelve feet the knot parted or untied, although the jury could find that it had not been subjected to undue strain and had not come in contact with the staging.   The block fell, and, striking the plaintiff, caused personal injuries for which he seeks damages.

A fellow workman warned the plaintiff "to look out," not, however, as he said in evidence, because the knot looked insecure, but because the staging was encumbered with bricks and other material.   The plaintiff testified that he did not hear the warning; and it was for the jury to say as to his further testimony, when referring to the superintendent, "He said he go to the office that way — he go when he get the rope ready. . . . He said go away," whether the plaintiff should have understood that he was not to untangle the rope but was to retire from beneath the block, or whether with his limited knowledge of our language he understood the superintendent to mean only that he was going away.   *Peterson* v. *Morgan Spring Co.* 189 Mass. 576, 579.   The plaintiff having been at work in the ordinary way under the direction of the defendant's representative, it was for the jury to determine under all the circumstances whether in its efficient performance he took reasonable precautions.   *Spicer* v. *South Boston Iron Co.* 138 Mass. 426, 430.

The question of the negligence of the superintendent also was for the jury for reasons stated in *Meagher* v. *Crawford Laundry Machinery Co.* 187 Mass. 586, *Connolly* v. *Booth,* 198 Mass. 577, *Feeney* v. *York Manuf. Co.* 189 Mass. 336, and *Doherty* v. *Booth,* 200 Mass. 522, which need not be repeated.

By the terms of the exceptions the plaintiff is to have judgment for the amount stipulated.

*So ordered.*